Glenn L. **ATCHLEY, et al., Plaintiffs,**

v.

**HERITAGE CABLE VISION ASSOCIATES, Defendant.**

No. 3:95–CV–432RM.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 10, 1995.

872

William R. Groth, Fillenwarth Dennerline Groth and Towe, Indianapolis, IN, for plaintiffs.

Timothy W. Woods, Jones Obenchain Ford Pankow and Lewis, South Bend, IN, Eric P. Simon, Kreitzman Mortensen and Simon, New York City, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the plaintiffs' motion to remand this action as improvidently removed. Also pending in this cause is a motion to dismiss for failure to state a claim filed by defendant Heritage Cable Vision Associates d/b/a TCI of MICHIANA. Because the plaintiffs need not respond to the defendants' motion to dismiss until after the remand motion is resolved, only the motion to remand is considered here.

### I. BACKGROUND

#### A. Procedural History

Glenn Atchley and other members of the International Brotherhood of Electrical Workers, Local Union No. 1393, ("IBEW") filed this action in St. Joseph County Circuit Court. The complaint alleges that TCI of Michiana ("TCI") violated IND.CODE § 22–2–5–1 (the "Wage Payment Statute") by its delinquent payment of wage increases and signing bonuses to the plaintiffs. Article 7 of the collective bargaining agreement ("CBA") between IBEW and TCI provides for the wage increases. The signing bonuses were agreed upon during negotiations that preceded the execution of the CBA. The complaint further alleges that the plaintiffs are entitled to liquidated damages, pursuant to IND. CODE § 22–2–5–2, for TCI's failure to pay the additional money in a timely fashion. Thus, the complaint frames the plaintiffs' cause of action as one arising under Indiana statutory law.

Heritage filed a Notice of Removal contending that the plaintiffs' complaint alleges a breach of an obligation created by the CBA between IBEW and TCI which must, pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, be resolved in a federal forum. The Notice alleges that removal of the action is proper because this court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441 and 1446 and the LMRA.

Heritage also filed a motion to dismiss in this court. The motion argues that § 301 of the LMRA completely preempts the plaintiffs' state law claims and that because the plaintiffs did not exhaust grievance and arbitration procedures, the complaint states no claim upon which relief can be granted.

The plaintiffs seek the case's remand to the St. Joseph Circuit Court pursuant to 28 U.S.C. § 1447(c). The plaintiffs argue that the claims presented and the remedies sought in the complaint arise exclusively out of Indiana statutory law. The plaintiffs assert that their claim to enforce independent rights created by statute does not require interpretation or analysis of the CBA because the only remedies they seek are those provided by the Wage Payment Statute. Thus, the plaintiffs argue, there is neither federal preemption nor federal jurisdiction under the LMRA. Heritage argues that the

plaintiffs' complaint, although framed as a claim arising under state law, actually alleges a breach of obligations created by the CBA and that resolution of this claim will require interpretation of the CBA.

## B.  Facts

The essential facts are clearly delineated in the pleadings.  TCI and the plaintiffs are parties to a CBA effective from December 8, 1994 to September 15, 1996.  Negotiations for this contract began in August of 1994 and continued through November 28, 1994, when TCI presented a final offer to IBEW.  This offer included a 40 cents per hour across the board wage increase to all employees who were members of the bargaining unit.  The wage increase was to become effective for members of the unit, except for those employees who were still under a probationary period, the first payroll period following ratification of the agreement.  During the course of negotiations, TCI also agreed to provide a $100.00 ratification or signing bonus to each of the plaintiffs at the time their wage increases were paid.

IBEW ratified the contract on December 8, 1994.  The next pay period commenced on December 10.  On December 12, TCI's attorney advised IBEW that the wage increases and bonuses would be processed upon IBEW's execution of the contract.  The plaintiffs, through their IBEW representative, made a verbal demand on or about December 19 for the hourly wage increase, retroactive to December 8, and for the $100.00 bonuses.  Checks that were issued on December 23, reflecting the first pay period following ratification of the contract, did not include the $100.00 per unit member bonus nor the 40 cents per hour across the board wage increase.

On January 9, an IBEW shop steward (one of the plaintiffs in this case) filed a grievance pursuant to the CBA's terms alleging that TCI had violated Article 7 by failing to implement the wage increases.  The grievance was denied, but the paychecks the plaintiffs received on January 20 included the 40 cents per hour wage increase retroactive to December 10.  The IBEW shop steward then advanced the grievance to the second step;

TCI denied the grievance at that stage, and IBEW did not advance the grievance to arbitration.

The contract was executed by TCI on January 26 and by IBEW on February 6.  The $100.00 per employee bonus was included in paychecks the plaintiffs received on or about February 10.

## II.  DISCUSSION

A federal district court has original jurisdiction over any civil action that arises under the "Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Section 301(a) of the LMRA provides that suits for violation of contracts between an employer and a labor organization present a federal question that arises under federal law, thus conferring original jurisdiction upon district courts.  29 U.S.C. § 185(a).  TCI asserts that this court has subject matter jurisdiction because the complaint actually alleges a violation of the CBA, while the plaintiffs claim that their complaint alleges an action arising under Indiana law.

■■■■ Removal may be challenged, and an action subsequently remanded, either for procedural defects or for the absence of subject matter jurisdiction.  28 U.S.C. § 1447(c); *In re Continental Casualty Co.*, 29 F.3d 292, 293 (7th Cir.1994).  In the absence of subject matter jurisdiction, "the case shall be remanded."  28 U.S.C. § 1447(c).  The existence of federal question jurisdiction is determined by the "well-pleaded complaint rule": federal question jurisdiction exists only where the federal question appears on the face of the plaintiff's properly pleaded complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).  A case may not be removed on the basis of a federal defense, *id.* at 393, 107 S.Ct. at 2430, but a plaintiff cannot " 'deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law.' "  *Sluder v. United Mine Workers*, 892 F.2d 549 (7th Cir.1989), *cert. denied*, 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990) (quoting *Oglesby v. RCA Corp.*, 752 F.2d 272, 275 (7th Cir.1985)).

"The Supremacy Clause of Art. VI of the United States Constitution grants to Congress the power to preempt state law. Congress exercised this power by enacting § 301(a) of the LMRA, 29 U.S.C. § 185(a)...." *Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d 1417, 1420 (7th Cir. 1995) (citations omitted). Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of parties.

29 U.S.C. § 185(a). In addition to providing federal jurisdiction over actions involving collective bargaining agreements, § 301 authorizes federal courts to fashion federal common law for enforcement of these agreements. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *see also Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d at 1421 ("This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of those agreements."). A court must apply federal law when resolving such disputes to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (citing *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)); *see also Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d at 1421.

Determining whether the claim arises under state law or whether the claim actually alleges breach of a collective bargaining agreement is important because the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Caterpillar v.*

*Williams,* 482 U.S. at 394, 107 S.Ct. at 2430 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). If the state law claim can be resolved without interpreting the collective bargaining agreement, the claim is independent and not preempted by § 301. If, however, the resolution of a state law claim depends on the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Lingle v. Norge Division of Magic Chef,* 486 U.S. at 413, 108 S.Ct. at 1885.

Therefore, when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption.

*Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d at 1422.

Because of these important policy considerations, "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement,'" even when the plaintiff seeks to circumvent the application of the LMRA by relying upon state law in the complaint. *Lingle v. Norge Division of Magic Chef,* 486 U.S. at 410, 108 S.Ct. at 1883 (quoting *Electrical Workers v. Hechler,* 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987)). The complaint in this case does not allege that the plaintiffs' action arises from the terms of, or a violation of, the CBA; rather, the complaint bases the cause of action upon an alleged violation of the Indiana Wage Payment Statute. Thus, the court must analyze the elements of the state law claim to assess whether adjudication of the claim will require interpretation of the collective bargaining agreement. *See Smith v. Colgate–Palmolive Company,* 943 F.2d 764 (7th Cir.1991); *Sluder v. United Mine Workers,* 892 F.2d 549; *Bettis v. Oscar Mayer Foods Corporation,* 878 F.2d 192 (7th Cir.1989).

IND.CODE § 22–2–5–1(b) provides, in pertinent part, that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." An employer who is included within the scope of the statute and fails to comply with its provisions

> shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee.

IND.CODE § 22–2–5–2.

The Wage Payment Statute is concerned with the time of payment of wages and is designed to insure the regularity and frequency of wage payments. *Fardy v. Physicians Health Rehabilitation Services, Inc.*, 529 N.E.2d 879, 881 (Ind.Ct.App.1988). The statute is a penal one which, because it is in derogation of common law, must be strictly construed. *Id.; Huff v. Biomet, Inc.*, 654 N.E.2d 830 (Ind.Ct.App.1995). The enforcement provision will not be invoked unless it is clear that a violation of the statute has occurred. *See Standard Liquors, Inc. v. Narcowich*, 121 Ind.App. 600, 99 N.E.2d 268 (1951).

The plaintiffs' right to receive wage payments in a timely fashion is a state-created right that exists independently of any contractual relations. The plaintiffs' claim, however, does not allege that they were not issued wages within the amount of time designated by the statute, but rather alleges that the amount of their paychecks did not include the wage increases and bonuses. They claim to have been underpaid, not unpaid. Their claim is based upon the fact that additional money, obtained through negotiations and pursuant to the terms of the collective bargaining agreement, was not paid on time.

Article 7 of the CBA provides that:

B. All employees in unit as of the date of ratification, shall receive an across-the-board increase of 40c per hour effective the first payroll period following ratification and on 9/16/95, except that employees hired between 9/16/94 and date of ratification, inclusive, shall receive a 40c per hour increase upon conclusion of their probationary period and on 9/16/95.

The plaintiffs argue that if any dispute exists, it only involves the interpretation of the meaning of the term "ratification" as used by the parties in the CBA to determine when the pay increase was to be implemented. Conversely, the defendants argue that the phrase "effective the first payroll period" does not indicate whether the parties agreed upon when the wage increases actually were to be included in the paychecks. Even if no discrepancy between the terms "ratification" and "execution" exists, a dispute remains as to when the parties agreed that the wage increase would be included in the paychecks. The agreement requires interpretation to determine whether the parties agreed to a date when the pay increases actually would be implemented, and not merely when they became effective.

Adjudication of plaintiffs' claim falls squarely within the category of cases in which "the pre-emption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). The CBA's terms will need to be interpreted and defined to adjudicate the plaintiffs' claim. This situation invokes the substantive policy of uniformity underlying § 301: the "possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1957).

The amount of pay that is in dispute is defined by the terms of the agreement, and

can be ascertained only through interpretation, not by mere reference. Article 7 must be interpreted to ascertain when the wage increase was to become effective and when it was to be actually implemented. Only after this date is ascertained will it be possible to determine whether TCI violated the statute.

■ Although § 301 is not interpreted so broadly as "to preempt nonnegotiable rights conferred on individual employees as a matter of state law ... it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement ... that decides whether a state cause of action may go forward." *Livadas v. Bradshaw,* —— U.S. at ——, 114 S.Ct. at 2078 (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) and *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). Here, the plaintiffs' right to be paid wage increases and signing bonuses is not nonnegotiable, but is created by and subject to the terms of the CBA.

This case is distinguished from a case where resolution of a plaintiff's claim did not require interpretation of the terms of an agreement, thus rendering the preemption doctrine inoperative. In *Lingle,* the Court concluded that analysis of the elements of the plaintiff's retaliatory discharge claim did not require interpretation of any term of the collective bargaining agreement. Analysis of the state law claim revealed that the plaintiff, to prevail on her retaliatory discharge claim, had to show that she was discharged or threatened with discharge and that the employer's motive for such action was to deter her from exercising her worker's compensation rights. *Lingle,* 486 U.S. at 406, 108 S.Ct. at 1881. To defend against the action, the employer had to show that it had a nonretaliatory motive for the discharge. *Id.* Thus, factual inquiries, rather than interpretation of any terms of the collective bargaining agreement, were the only analyses necessary to adjudicate the claim.

This case is also distinguished from language in *Livadas* that noted that a claim brought pursuant to §§ 201 and 203 of the California Labor Code, sections that are similar to the Indiana Wage Payment statute, could not possibly be preempted where the plaintiff brought a claim to receive payment of all wages owed to her upon termination of her employment. *Livadas,* —— U.S. at ——, 114 S.Ct. at 2079. Sections 201 and 203 of the California Labor Code provide for an employer's payment of a penalty if it has willfully failed to immediately pay all wages owed to discharged employees. *Id.* at —— – ——, 114 S.Ct. at 2071–2073. Livadas, who demanded payment of all wages upon learning of her dismissal, alleged that she was owed additional money for late payment of her wages. The only issue was whether her employer willfully failed to pay the wages. If answered in the affirmative, nothing more than a calendar need be consulted to calculate the amount of damages owed. *Id.* at ——, 114 S.Ct. at 2079 ("the primary text for deciding whether Livadas was entitled to a penalty was not the [collective bargaining agreement], but a calendar"). The Court noted that there was no dispute over the amount of payment to which Livadas would be entitled. *Id.* Relying upon *Lingle,* the Court reasoned that because the independent state law controlled resolution of the claim, the need to merely refer to the agreement for the purpose of computing damages would not pre-empt the state law claim. *Id.*

■ Here, however, the inquiry into whether the defendants were delinquent in payment of wage increases and bonuses involves more than mere factual questions. The court's resolution of whether the defendants violated the Indiana Wage Payment Statute turns on when the parties intended the wage increase to be implemented, not merely upon cross referencing the terms of the collective bargaining to a calendar to ascertain whether a certain period of time had elapsed. This involves more than a mere factual inquiry. This date can be determined only by interpreting the terms of Article 7 of the CBA. Accordingly, § 301 confers this court with subject matter jurisdiction over this action, and the plaintiffs' motion to remand for lack of subject matter jurisdiction therefore must be denied.

## III. CONCLUSION

This is not a case in which the plaintiffs' state law claims can be resolved without con-

struing the CBA that makes them TCI employees. Resolution of the case will require interpretation of the CBA, not merely a glance and a simple arithmetic calculation, and federal law will govern that interpretation. This court has jurisdiction. Therefore, the court DENIES the plaintiffs' motion to remand this case to the St. Joseph Circuit Court (filed June 23, 1995 (# 12)). Pursuant to the court's June 13 order, the plaintiffs' response to the defendant's motion to dismiss shall be filed within fourteen days of the date of this order.

SO ORDERED.