Onie **ENGLAND** and Linda **England, Plaintiffs,**

v.

**THERMO PRODUCTS, INC. and Mobile Health Care, Inc., Defendants.**

**No. 3:95–CV–756RM.**

United States District Court, N.D. Indiana, South Bend Division.

July 1, 1996.

Paul B. Kusbach, Elihu D. Feustel, South Bend, IN, for Onie D. England, Linda England.

Byron L. Myers, Richard A. Smikle, George A. Norwood, Ice Miller Donadio and Ryan, Indianapolis, IN, for Thermo Products, Inc.

Edward N. Kalamaros, Patrick J. Hinkle, Edward N. Kalamaros & Associates, South Bend, IN, Byron L. Myers, Ice Miller Donadio and Ryan, Indianapolis, IN, for Mobile Health Care, Inc.

### MEMORANDUM AND ORDER

MILLER, District Judge.

Plantiff Onie England brought this negligence suit in state court against his employer, defendant Thermo Products, Inc., and another party, Mobile Health Care, Inc., alleging with respect to Thermo Products that it had negligently failed to inform him that a chest X–ray taken as a condition of employment had demonstrated early indications of lung cancer. Linda England, Mr. England's wife, asserts a claim for loss of consortium. Thermo Products promptly removed the cause to this court on the theory that Mr.

England's claims are completely preempted by federal law. This cause is now before the court on Thermo Products' motion for summary judgment and on the Englands' motion for oral argument on the summary judgment motion. Because the parties' briefs adequately apprise the court of their positions, the court denies the Englands' motion for oral argument.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.

The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates*, 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted). Applying these standards, for the reasons discussed below, the court finds that Thermo Products' motion for summary judgment must be granted.

## I. FACTS

Onie England worked for defendant Thermo Products, Inc. since 1987 as a spray painter. At all times relevant to this case, Mr. England was represented by the General Teamsters Chauffeurs & Helpers Union Local 135 (the "Union"). The Union and Thermo Products are parties to a Collective Bargaining Agreement ("CBA") that governed the terms and conditions of Mr. England's employment. One of the several provisions of the CBA provided that all spray painters, such as Mr. England, would be required to have a chest X–ray taken at Thermo Products' expense on an annual basis. The specific provision of the CBA, under Article XVI ("Health and Safety"), provided that:

2. *Physical and Mental Examinations.* Any physical or mental examinations shall be promptly complied with by all employees, provided, however, that the Company shall pay for such physical and mental examinations. Welders and painters shall be required by the Company to have a chest x-ray during each year of the agreement, at Company expense. Such x-rays shall be scheduled by the Company and the employees scheduled during regular hours of work shall be paid any lost earnings resulting therefrom.

Pursuant to this provision of the CBA, Mr. England had an X–ray taken every year from 1988 to January 1995. After the first X–ray, in 1988, Mr. England received a copy of a corresponding report that noted the presence of "extensive biapical bullous disease." Mr. England took this report to his family physician, who told Mr. England that the X–ray showed that Mr. England had emphysema in one of his lungs. Other than this one time in 1988, Mr. England was never again provided with an X–ray report until he requested his reports in August 1995.

According to Mr. England, the 1995 report showed serious abnormalities that could indicate lung cancer and recommended further testing, and the 1994 report also showed abnormalities that indicated the beginning of lung cancer. Mr. England discovered in August 1995 that he has terminal lung cancer. Mr. England maintains that his lung cancer had not metastasized in January 1995, and had he been warned about his condition at that time, the cancer may have been subject to potentially life-saving treatment. Although Mr. England agrees that Thermo Products' duty to provide him with an annual chest X–ray arises solely from the CBA, he contends that Thermo Products had a derivative duty as a matter of Indiana common law

to disclose the findings of the X–ray reports to its employees. Mr. England contends that Thermo Products breached this duty to disclose, and is liable for its negligence.

The CBA contained a grievance provision that must be followed "[s]hould any difference arise between the Company and the Union or between the Company and any employees in the bargaining unit in regard to rates of pay, hours of work, conditions of employment, or as to the meaning or application of the provisions of this Agreement." Mr. England never brought a grievance pertaining to this claim pursuant to this provision of the CBA.

## II. FEDERAL PREEMPTION

Thermo Products' argument on behalf of its summary judgment motion is two-fold. First, Thermo Products contends that Mr. England's negligence claim is preempted by § 301 of the Fair Management Labor Relations Act ("LMRA"), 29 U.S.C. § 185. Second, Thermo Products contends that Mr. England's claim, when properly construed as a § 301 claim, must fail since Mr. England did not exhaust his administrative remedies before filing suit and because he has not alleged that the Union breached its duty of fair representation. The first issue—whether § 301 of the LMRA preempts Mr. England's claim—is of even more immediate importance than the parties suggest in their briefs, since if § 301 does not preempt Mr. England's claim, the case lacks any basis for federal jurisdiction and must be remanded to state court pursuant to 28 U.S.C. § 1447 without first passing on any of the pending motions. See 28 U.S.C. § 1447(b) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); see also In re Continental Casualty Co., 29 F.3d 292, 293 (7th Cir.1994).

■ "The Supremacy Clause of Art. VI of the United States Constitution grants to Congress the power to preempt state law. Congress exercised this power by enacting § 301(a) of the LMRA, 29 U.S.C. § 185(a)...." Loewen Group Int'l. Inc. v. Haberichter, 65 F.3d 1417, 1420 (7th Cir.

1995) (citations omitted). Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of parties.

29 U.S.C. § 185(a). In addition to providing federal jurisdiction over actions involving collective bargaining agreements, § 301 authorizes federal courts to fashion federal common law for enforcement of these agreements. Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); see also Loewen Group Int'l. Inc. v. Haberichter, 65 F.3d at 1421 ("This section provides federal court jurisdiction over controversies involving collective bargaining agreements and also authorizes federal courts to fashion a body of federal law for the enforcement of those agreements."). A court must apply federal law when resolving such disputes to "ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." Lingle v. Norge Division of Magic Chef, 486 U.S. 399, 404, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988) (citing Teamsters v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)); see also Loewen Group Int'l. Inc. v. Haberichter, 65 F.3d at 1421.

■ Section 301(a) of the LMRA thus provides that suits for violation of contracts between an employer and a labor organization present a federal question that arises under federal law, thus conferring original jurisdiction upon district courts. 29 U.S.C. § 185(a). The existence of federal question jurisdiction is determined by the "well-pleaded complaint rule": federal question jurisdiction exists only where the federal question appears on the face of the plaintiff's properly pleaded complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). A case may not be removed on the basis of a federal defense,

*id.* at 393, 107 S.Ct. at 2430, but a plaintiff cannot " 'deny a defendant his right to a federal forum by artfully disguising an essentially federal law claim in terms of state law.' " *Sluder v. United Mine Workers,* 892 F.2d 549 (7th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990) (*quoting Oglesby v. RCA Corp.,* 752 F.2d 272, 275 (7th Cir.1985)).

Determining whether the claim arises under state law or whether the claim actually alleges breach of a collective bargaining agreement is important because the "preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' " *Caterpillar v. Williams,* 482 U.S. at 394 [107 S.Ct. at 2430] (*quoting Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1 [103 S.Ct. 2841, 77 L.Ed.2d 420] (1983)). If the state law claim can be resolved without interpreting the collective bargaining agreement, the claim is independent and not preempted by § 301. If, however, the resolution of a state law claim depends on the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Lingle v. Norge Division of Magic Chef,* 486 U.S. at 413 [108 S.Ct. at 1885].

> Therefore, when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption.

*Loewen Group Int'l. Inc. v. Haberichter,* 65 F.3d at 1422.

Because of these important policy considerations, "[s]ection 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement,' " even when the plaintiff seeks to circumvent the application of the LMRA by relying upon state law in the complaint. *Lingle v.*

*Norge Division of Magic Chef,* 486 U.S. at 410 [108 S.Ct. at 1883–84] (*quoting Electrical Workers v. Hechler,* 481 U.S. 851, 859 n. 3 [107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791] (1987)).

*Atchley v. Heritage Cable Vision Assocs.,* 904 F.Supp. 870, 873–874 (N.D.Ind.1995).

■■■ Mr. England contends that his action does not arise from the terms of, or a violation of, the CBA. Rather, Mr. England bases his negligence claim upon an alleged violation of a duty imposed by Indiana common law. Although a preempted state law claim is construed as a breach of contract claim under § 301, a state-law tort action against an employer also can be preempted by § 301 "if the duty to the employee which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement." *United Steelworkers of America v. Rawson,* 495 U.S. 362, 369, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990) (*citing Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). Stated another way, § 301 preempts a state-law tort claim if the court must "ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union ..., and second, the nature and scope of that duty." *United Steelworkers of America v. Rawson,* 495 U.S. at 369, 110 S.Ct. at 1909 (*quoting Electrical Workers v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (1987)). Accordingly, the court must analyze the elements of Mr. England's negligence claim to assess whether adjudication of his claim will require interpretation of the CBA. *See Smith v. Colgate–Palmolive Company,* 943 F.2d 764 (7th Cir.1991); *Sluder v. United Mine Workers,* 892 F.2d 549; *Bettis v. Oscar Mayer Foods Corporation,* 878 F.2d 192 (7th Cir.1989).

■■■ Under Indiana law, a plaintiff must establish three elements to premise a recovery on a theory of negligence: "(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff

proximately caused by the breach." *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). Mr. England contends that although the CBA does not impose a duty to disclose the X–ray results, Thermo Products assumed a duty as a matter of law by its actions. "Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is a question of law exclusively for the court." *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 517 (Ind.1994). "Such a duty of care will be found by the courts where reasonable persons would recognize it and agree that it exists." *Stump v. Commercial Union,* 601 N.E.2d 327, 332 (Ind.1992). Typically, "[i]mposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Hawn v. Padgett* 598 N.E.2d 630, 632 (Ind.Ct.App.1992). Without a duty, there can be no recovery in negligence. *Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d at 517; *Webb v. Jarvis,* 575 N.E.2d at 995.

▪ Mr. England contends that Thermo Products assumed a duty pursuant to § 323 of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Indiana courts recognize that a party may voluntarily undertake a duty to act in due care with respect to another. *See, e.g., Mayhue v. Sparkman,* 653 N.E.2d 1384 (Ind. 1995) (approving use of § 323 in medical malpractice case); *Claxton v. Hutton,* 615 N.E.2d 471, 474 (Ind.Ct.App.1993) ("A duty of care exists when a party assumes such a duty, either gratuitously or voluntarily."); *Lucas v. Dorsey Corp.,* 609 N.E.2d 1191, 1198 (Ind.Ct.App.1993) (assumption of a duty creates a special relationship between parties

and a duty to act as a reasonably prudent person); *Cox v. American Aggregates Corp.,* 580 N.E.2d 679, 685 (Ind.Ct.App.1991).

▪ Mr. England admits that Thermo Products' duty to take an annual chest X–ray is imposed solely by the CBA, but he contends that Thermo Products assumed the duty to disclose information to him as a matter of Indiana law, and whether Thermo Products assumed this duty is an issue of state law that in no way requires the interpretation of any term of the CBA. This is an attractive argument; both parties apparently agree that the CBA unambiguously imposed upon Thermo Products the duty to take an annual X–ray, but that the CBA does not require Thermo Products to disclose any information resulting from the X–rays. In its most recent pronouncement on the issue, the Supreme Court unanimously stated that "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw,* 512 U.S. 107, 123, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994); *see also Loewen Group Int'l. Inc. v. Haberichter,* 65 F.3d at 1421 ("In order to determine whether a party's state law claims are preempted under this section, we look to see whether the resolution of the claim depends upon the meaning of, or requires the interpretation of, a collective bargaining agreement."); *id.* at 1422 ("[W]hen the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption.").

The language from these cases supports Mr. England's argument that his claim is not preempted. No term of the CBA appears to be in dispute in this cause since neither party contends the CBA addresses a duty to disclose, and therefore resolution of the claim does not appear to depend upon the meaning of, or require interpretation, the CBA. Thus, were the court writing on a clean slate, it would be inclined to conclude that the CBA

in this cause is "merely a tangential consideration in the resolution of an otherwise independent state law tort action," and that Mr. England's negligence claim is not preempted.

The slate, however, is not clean; both the Seventh Circuit and the Supreme Court have decided cases similar to this cause and have decided that the state-law claims were preempted. In *Sluder v. United Mine Workers of America*, 892 F.2d 549 (7th Cir. 1989), the plaintiff, a member of the United Mine Workers of America ("UMWA"), was injured in a mining accident. The UMWA had entered into a collective bargaining agreement with Mr. Sluder's employer. Mr. Sluder sued the UMWA in an Illinois state court, alleging that since the UMWA had assumed a duty to make safety inspections of the coal mine it had become subject to the common law duty to perform these inspections with due care. Mr. Sluder characterized his claim as for the negligent performance of a voluntarily assumed duty, and argued that it was a valid tort cause of action arising wholly independently of obligations imposed by the collective bargaining agreement.

The Seventh Circuit analyzed the steps for establishing a cause of action for negligence in Illinois, concentrating on the duty aspect. Under Illinois law, the court noted, the scope of the duty is limited by the extent of the undertaking, and any duty assumed must be strictly limited to the scope of the undertaking. *Id.* at 553–554. The court held that "[i]n order to define the scope of the duty assumed by the union, it would be necessary to establish the precise responsibility assumed by the union," and concluded that "[i]n our view, it would not be possible to define, with the precision demanded by Illinois law, the scope of the union's duty without reference to the collective bargaining agreement that governs the relationship between the company and the union." *Id.* at 554. The court thus held that Mr. Sluder's state-law claims was properly preempted by § 301 of the LMRA.

Less than six months after the Seventh Circuit decided the *Sluder* case, the Supreme Court handed down its decision in *United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), a suit brought by survivors of miners who had been killed by a mining fire. The plaintiffs' complaint alleged that the miners' deaths were proximately cause by the negligent acts of the United Steelworkers of America, which had been the exclusive bargaining representative of the deceased miners. The plaintiffs contended that the United Steelworkers had not exercised due care in exercising its responsibilities under the collective bargaining agreement to ensure the mines' safety. Unlike this case or the *Sluder* case, the *Rawson* case was wholly litigated in the state courts of Idaho. After extensive litigation, including two prior opinions by the same court, the Idaho Supreme Court held that § 301 of the LMRA did not preempt the plaintiffs' negligence claims. Distinguishing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Idaho Supreme Court stated that "Our narrow holding today is that the Union, having inspected, assumed a duty to use due care in inspecting and, from the duty to use due care in inspecting arose the further duty to advise the committee of any safety problems the inspection revealed." *United Steelworkers of America v. Rawson*, 495 U.S. at 367, 110 S.Ct. at 1908.

The United Steelworkers petitioned the Supreme Court for certiorari, but while that petition was pending, the Supreme Court decided *Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), "in which it was held that an individual employee's state-law tort suit against her union for breach of the union's duty of care to provide the employee with a safe workplace must be treated as a claim under the federal labor law, when the duty of care allegedly arose from the collective bargaining agreement between the union and the employer." *United Steelworkers of America v. Rawson*, 495 U.S. at 367, 110 S.Ct. at 1908. The Supreme Court thus granted certiorari in *Rawson*, vacated the Idaho Supreme Court's judgment, and remanded the case for further consideration in light of *Hechler*. *United Steelworkers of America v. Rawson*, 482 U.S. 901, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987).

On remand, the Idaho Supreme Court adhered to its original opinion as written, and distinguished *Hechler*, stating that in *Hechler* the Supreme Court had considered a situation where the alleged duty of care arose from the collective bargaining agreement, whereas in *Rawson* "the activity is concededly undertaken and the standard of care is imposed by state law without reference to the collective bargaining agreement." *United Steelworkers of America v. Rawson*, 495 U.S. at 367, 110 S.Ct. at 1908. The Idaho Supreme Court further stated that it was not "faced with looking at the Collective Bargaining Agreement to determine whether it imposes some new duty upon the union-rather it is conceded that the union undertook to inspect and, thus, the issue is solely whether that inspection was negligently performed under traditional Idaho tort law." *Id.* at 367–368, 110 S.Ct. at 1909.

On review, the United States Supreme Court again reversed the Idaho Supreme Court. The Supreme Court noted that "[a]ccording to the Idaho Supreme Court, the Union may be liable under state tort law because its duty to perform that inspection reasonably arose from the fact of the inspection itself rather than the fact that the provision for the Union's participation in mine inspection was contained in the labor contract." *Id.* at 371, 110 S.Ct. at 1910.

As we see it, however, respondents' tort claim cannot be described as independent of the collective-bargain agreement. This is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society. There is no allegation, for example, that members of the safety committee negligently cause damage to the structure of the mine, an act that could be unreasonable irrespective of who committed it and could foreseeably cause injury to any person who might possibly be in the vicinity.

\* \* \* \* \* \*

If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners. Clearly,

the enforcement of that agreement and-the remedies for its breach are matters governed by federal law. "[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of suit for breach of contract or in a suit alleging liability in tort." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. at 211, [105 S.Ct. at 1911]. Preemption by federal law cannot be avoided by characterizing the Union's negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort. *Id.* at 371–372, 110 S.Ct. at 1910–11; *see also Sherwin v. Indianapolis Colts. Inc.*, 752 F.Supp. 1172, 1177 (N.D.N.Y.1990) (*quoting United Steelworkers of America v. Rawson*, 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362) ("In order to be independent of the collective bargaining agreement, the *Rawson* court indicated, a tort claim must allege a violation of a duty 'owed to every person in society,' as opposed to a duty owed only to employees covered by the collective bargaining agreement.").

*Rawson* cannot be distinguished from this case in any meaningful way. In *Rawson* the Idaho Supreme Court had expressly held that the plaintiffs' negligence claim was not preempted because the Union's duty to perform inspections reasonably arose from the fact of the inspections themselves rather than the fact that the provision for the Union's participation in mine inspection was contained in a labor contract; Mr. England relies on the same sort of theory. Further, the dissenting opinion in *Rawson* reveals that the Idaho Supreme Court's opinion in *Rawson* was founded upon § 323 of the Restatement (Second) of Torts, which Mr. England relies upon in this case.

The line between the holdings in *Sluder* and *Rawson* and cases such as *Lingle v. Norge Division of Magic Chef*, 486 U.S. at 404, 108 S.Ct. at 1880 (1988), *Livadas v. Bradshaw*, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994), and *Loewen Group Int'l.*

*Inc. v. Haberichter,* 65 F.3d 1417 (7th Cir. 1995), may be elusive since the latter cases were founded upon the principle that claims are preempted by § 301 of the LMRA only if the resolution of the claim depends upon the meaning of, or requires the interpretation of, a collective bargaining agreement, and the former cases concentrate on whether the state-law claim is independent of the collective bargaining agreement, *see United Steelworkers of America v. Rawson,* 495 U.S. at 371, 110 S.Ct. at 1910–11 ("respondents' tort claim cannot be described as independent of the collective-bargain agreement"), or requires reference to it, *see Sluder v. United Mine Workers of America,* 892 F.2d at 554 ("In our view, it would not be possible to define, with the precision demanded by Illinois law, the scope of the union's duty without reference to the collective bargaining agreement that governs the relationship between the company and the union."). Certainly, the dissent in *Rawson* believed that the holding was not consistent with *Lingle. United Steelworkers of America v. Rawson,* 495 U.S. at 377–378, 110 S.Ct. at 1913–14 (Kennedy, J., dissenting) (finding no reason to dispute the Idaho Supreme Court's specific finding that no interpretation of the collective-bargaining agreement was required that would be a cause for preemption pursuant to *Lingle* ). Indeed, the Seventh Circuit has impliedly questioned the continuing vitality of both *Sluder* and *Hechler* in light of the Supreme Court's more recent *Livadas:*

> *Lingle, [Hawaiian Airlines, Inc. v.] Norris,* [512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) ], and *Livadas* show that where the plaintiff seeks recovery for breach of duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption under the LMRA.... However, we also know that sometimes a state law claim may, in effect, operate as an interpretation of a contract such that it is properly subject to complete preemption. Thus, in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202 [105 S.Ct. 1904, 85 L.Ed.2d

206] (1985), the Court held that § 301 completely preempted the plaintiff's state law claim for bad-faith handling of an insurance claim, reasoning that the plaintiff's right to the good-faith administration of benefits was rooted in contract and therefore would inevitably involve interpretation of the § 301 contract.

> \* \* \* \* \* \*

> On occasion, it seems, the Court has read *Lueck* differently, and approached complete preemption under § 301 in a very different way [citing *Hechler* and *Rawson* ]; yet *Hechler* and *Rawson* are conspicuously absent from the Court's most recent discussion of complete preemption under § 301 [citing *Livadas* ].

*Rice v. Panchal,* 65 F.3d 637, 644 and n. 6 (7th Cir.1995).

Despite all this, however, the Supreme Court has not overruled or disavowed *Rawson,* and this court cannot hold that the Supreme Court has abandoned its rationale used in *Rawson* simply because that case is "conspicuously absent" in *Livadas.*[1] As such, although the court is, of course, bound to follow the Supreme Court's and Seventh Circuit's precedents in *Livadas, Lingle, Loewen* and *Panchal,* it is equally obligated to follow those courts' precedents in *Hechler, Rawson,* and *Sluder.*

Mr. England's negligence claim against Thermo Products thus is completely preempted by § 301 of the LMRA. As was the case in *Sluder* with Illinois law, Indiana law demands that if negligence is predicated upon an assumed duty, "precisely what has been undertaken must be determined because liability is no broader than the actual duty assumed," *Perry v. Northern Indiana Public Service Co.,* 433 N.E.2d 44, 50 (Ind. Ct.App.1982); *see also Board of Comm'rs of Monroe County v. Hatton,* 427 N.E.2d 696, 699–700 (Ind.Ct.App.1981), so "it would not be possible to define, with the precision demanded by [Indiana] law, the scope of [Thermo Products'] duty without reference to the

---

1. Indeed, after noting that the courts of appeals "have not been entirely uniform in their understanding and application of the principles set down in *Lingle* and *Lueck,*" the Court specifically

declined to "resolve disagreements that have arisen over the proper scope of our earlier decisions." *Livadas v. Bradshaw,* 512 U.S. at 124 n.18, 114 S.Ct. at 2078 n. 18.

collective bargaining agreement that governs the relationship between the company and the union." *Sluder v. United Mine Workers of America,* 892 F.2d at 554.

Mr. England claims that the duty he alleges Thermo Products breached is a creation of state common law pursuant to § 323 of the Restatement (Second) of Torts. But as in *Rawson,* any duty Thermo Products may have had with respect to disclosing X–ray results is intertwined inextricably with its duty under the CBA to provide Mr. England with an annual X–ray. Mr. England is correct that the duty imposed upon Thermo Products by the CBA, at least on its face, is to merely take the X–ray, and that the CBA does not explicitly address or create a duty to also disclose the X–ray results. But if Thermo–Products has a duty—by assumption, force of state law, or otherwise—to disclose this information to its employees, this duty must depend upon (and thus cannot be independent of) Thermo Products' CBA–imposed duty to provide Mr. England with a free annual X–ray. "Preemption by federal law cannot be avoided by characterizing [Thermo Products'] negligent performance of what it does on behalf of the members of the bargaining unit pursuant to the terms of the collective-bargaining contract as a state-law tort." *United Steelworkers of America v. Rawson,* 495 U.S. at 371–372, 110 S.Ct. at 1911.

Thermo Products had a duty under the CBA to provide Mr. England with a free annual chest X–ray, and Mr. England contends this duty created a derivative duty to also disclose the results of the X–rays. No matter how it is framed by Mr. England, this claim is essentially that Thermo Products was negligent in its performance of its CBA–imposed duty to arrange for the X–rays. "If [Thermo Products] failed to perform a duty in connection with [its obligation to provide for the annual X–rays], it was a duty arising out of the collective-bargaining agreement." *Id.* at 371, 110 S.Ct. at 1910.

Clearly, the enforcement of that agreement and the remedies for its breach are matters governed by federal law. "[Q]ues-

tions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of suit for breach of contract or in a suit alleging liability in tort." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911.

*Id.* Further, since Mr. England's negligence claim would "require the court to 'ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on [Thermo Products], and second, the nature and scope of that duty,'" his negligence claim is "not sufficiently independent of the collective-bargaining agreement to withstand the preemptive force of § 301." *Id.* (*quoting Electrical Workers v. Hechler,* 481 U.S. at 853, 107 S.Ct. at 2163).

In other words, to resolve Mr. England's claim, the court must do more than merely reference the CBA; the court must construe the terms of the CBA to determine whether Thermo Products had a duty to disclose X–ray results. *See Loewen Group Int'l. Inc. v. Haberichter,* 65 F.3d at 1421 ("In order to determine whether a party's state law claims are preempted under this section, we look to see whether the resolution of the claim depends upon the meaning of, or requires the interpretation of, a collective bargaining agreement."). As the Supreme Court noted in *Livadas,* "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement that decides whether a state cause of action may go forward." *Livadas v. Bradshaw,* 512 U.S. at ——, 114 S.Ct. at 2078; *see also Loewen Group Int'l. Inc. v. Haberichter,* 65 F.3d at 1421 (noting that the Supreme Court "took pains to stress" this very point). As in *Rawson,* Mr. England's negligence claim is not "'independent' of rights under the collective-bargaining agreement," *Livadas v. Bradshaw,* 512 U.S. at 123, 114 S.Ct. at 2078, and is therefore preempted by § 301 of the LMRA.[2] Accordingly, the court has subject-matter jurisdiction over this cause and the cause was properly removed to this court.

---

**2.** That the CBA contains no language addressing a duty to disclose the X–ray results is of no

consequence. In a case where the plaintiff claimed intentional infliction of emotional dis-

### III. ANALYSIS OF § 301 CLAIM

 It is undisputed that the CBA between Thermo Products and the Union establishes an exclusive grievance procedure for resolving disputes arising under the CBA, and that Mr. England made no attempt to utilize those procedures before filing this suit. Subject to narrow exceptions, an employee may not bring a § 301 claim in federal court without first exhausting administrative remedies required by the CBA. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657–659, 85 S.Ct. 614, 618–619, 13 L.Ed.2d 580 (1965); *Smith v. Colgate–Palmolive Company,* 943 F.2d 764, 771 (7th Cir.1991) (citations omitted); *see also Stevens v. Northwest Indiana District Council United Bhd. of Carpenters,* 20 F.3d 720, 731 (7th Cir.1994); *McCarty v. Reynolds Metals Co.,* 883 F.Supp. 356, 362–363 (S.D.Ind.1995). A § 301 claim ordinarily must fail if, as here, the plaintiff has not exhausted his administrative remedies and does not contend that the Union breached its duty of fair representation. *See Huffman v. Westinghouse Corp.,* 752 F.2d 1221, 1223 (7th Cir.1985).

 Mr. England ventures a brief argument that exhausting his administrative

remedies would have been futile. The contention is not implausible—Mr. England could not have been made whole by any of the ordinary remedies afforded by a union grievance, such as reinstatement, back pay, restoration of seniority, or the like—but neither has it been proven. Mr. England, who seeks to avoid the general requirement of exhaustion of administrative remedies, bears the burden of proof of any exception to that requirement. Use of the administrative remedies would, at least, have assisted in resolving the parties' understanding of Thermo Products' responsibility under the CBA with respect to the X–rays. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164, 103 S.Ct. 2281, 2290–2291, 76 L.Ed.2d 476 (1983).

Accordingly, Mr. England's claim, when properly construed as a § 301 claim, must fail as a matter of law. The court grants Thermo Products' summary judgment motion with respect to Count I of the complaint.[3]

### IV. MRS. ENGLAND'S CLAIM

 Mrs. England's claim against Thermo Products is for loss of consortium. Un-

---

tress against her employer, the Seventh Circuit held that:

> the fact that a particular provision of the collective bargaining agreement may not explicitly address the conduct underlying Ms. Douglas' complaint does not mean that resolution of an intentional infliction of emotional distress claim does not require interpretation of the agreement. The words of the contract are, of course, the foundation of the parties' bargain. But those words must be interpreted. *See International Ass'n of Machinists. Lodge No. 1000 v. General Elec. Co.,* 865 F.2d 902, 906 (7th Cir.1989). Thus, the parties' contractual obligations regarding the terms and conditions of the employment relationship need not be reduced to the words "expressly recited in the agreement." *Allis–Chalmers,* 471 U.S. at 214, 105 S.Ct. at 1913. The collective bargaining agreement is more than a document containing specific contract provisions: "it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties.... [T]he governmental nature of

> the collective-bargaining process demand[s] a common law of the shop which implements and furnishes the context of the agreement." *Id.* at 579–80, 80 S.Ct. at 1351 (*quoting* Cox, *Reflections Upon Labor Arbitration,* 72 Harv. L.Rev. 1482, 1498–99 (1959)). This "industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Id.* at 581–82, 80 S.Ct. at 1352. Moreover, "[t]he assumption that the labor contract creates no implied rights is not one that state law may make." *AllisChalmers,* 471 U.S. at 215, 105 S.Ct. at 1913. Whether the words of the collective bargaining agreement create any implied rights that might govern the alleged misconduct upon which Ms. Douglas' claim is based is a "question of federal contract interpretation." *Id.* Such questions must be resolved by references to "uniform federal law." *Id.* at 211, 105 S.Ct. at 1911.

*Douglas v. American Information Technologies Corp.,* 877 F.2d 565, 572–573 (7th Cir.1989) (footnotes omitted).

3. Because the court grants Thermo Products' summary judgment motion without need to resolve its motion to strike, the motion to strike is denied as moot.

der Indiana law, a loss of consortium claim is derivative in nature and wholly depends upon the validity of the spouse's underlying claim. *Mitchell v. Collagen Corp.*, 870 F.Supp. 885, 897–898 (N.D.Ind.1994), *aff'd,* 67 F.3d 1268 (1995); *Bailor v. Salvation Army,* 854 F.Supp. 1341, 1356 (N.D.Ind.1994). Since Mr. England's claim against Thermo Products must fail as a matter of law, so too must Mrs. England's claim against Thermo Products, and the court grants Thermo Products' summary judgment motion with respect to Mrs. England's claim for loss of consortium.

## V. CONCLUSION

This is a troubling case. Mr. England does not contend that Thermo Products breached the collective bargaining agreement; he contends that Thermo Products breached a duty imposed upon it by state law embodying § 323 of the Second Restatement of Torts. If Indiana law imposed a duty on Thermo Products, it did not do so because it was a party to the collective bargaining agreement, but rather because of the special relationship in which it stood with respect to Mr. England. Nonetheless, the *Rawson* and *Sluder* cases require the court, in the interest of uniformity of federal labor law, to treat the case as one based on the collective bargaining agreement, and Mr. England then must lose his case because he did not file a grievance to determine the meaning of a collective bargaining agreement he does not contend was breached. For these reasons, the court:

(1) DENIES the plaintiffs' motion for oral argument (filed February 15, 1996 (# 30));

(2) DENIES AS MOOT Thermo Products' motion to strike (filed February 12, 1996 (# 27)); and

(3) GRANTS Thermo Products' motion for summary judgment (filed October 27, 1995 (# 12)) with respect to the plaintiffs' claims against Thermo Products.

The plaintiffs' claims against defendant Mobile Health Care, Inc. remain.

SO ORDERED.