Martha R. PAULEY, Plaintiff,

v.

FORD ELECTRONICS AND REFRIGERATION CORPORATION, Defendant.

No. NA 95–117–C H/H.

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 16, 1996.

---

Thomas M. McDonald, Applegate, McDonald, Koch & Arnold, Bloomington, IN, for plaintiff.

Susan B. Tabler, Ice Miller Donadio & Ryan, Indianapolis, IN, for defendant.

## ENTRY ON JURISDICTIONAL QUESTION

HAMILTON, District Judge.

This case raises a deceptively simple question. Where an employer recruits a new employee by overstating (whether intentionally or negligently) the wage rate the employee will be paid, and where wages are controlled by a collective bargaining agreement governed by federal law, does the new employee have any ability to recover damages for the employer's false promise or representation concerning the wage rate? The parties have identified, and the court has found, surprisingly little authority on this question. However, for reasons explained below, the court concludes that it lacks federal question jurisdiction and must remand this action to state court without deciding the merits.

### Background

Plaintiff Martha R. Pauley works for defendant Ford Electronics and Refrigeration Corporation ("FERCO"). She brought this suit in state court to collect the difference between wages that FERCO allegedly promised her when she was hired and the lower wages she has actually received. She also sought to recover related damages. FERCO responded by saying that it has paid Pauley according to the terms of the collective bargaining agreement between FERCO and its employees' union. FERCO removed the action from state court to federal court on the theory that the collective bargaining agreement covers the subject of wages and therefore any dispute regarding an employee's wages necessarily arises under that agreement and pursuant to federal labor law. FERCO then moved for summary judgment, arguing that Pauley did not pursue the ad-ministrative remedies spelled out in the agreement, as federal labor law requires. Pauley responded by arguing that her state law claims do not arise under and are not preempted by federal labor law. After reviewing the parties' submissions on the motion for summary judgment, the court had doubts about its subject matter jurisdiction. The court raised that issue, invited further briefs, and heard oral argument on that question and the summary judgment issues.

The issue here is whether the action was properly removed from state court. The critical facts for deciding that jurisdictional question are the contents of the allegations in the plaintiff's complaint filed in state court. In addition, FERCO's answer and the parties' submissions on FERCO's motion for summary judgment provide some important undisputed information for deciding the scope of FERCO's federal preemption theories relating to both the court's jurisdiction and to FERCO's defenses to Pauley's claims.

In October 1991, William Vollmer, an agent of FERCO, contacted Martha Pauley and asked her to interview for a position with FERCO. Compl. ¶ 4. Pauley interviewed for a service maintenance position and was told at the interview that the beginning wage rate for service maintenance employees was $15.395 per hour. Compl. ¶¶ 5–6. In a letter dated October 18, 1994, Kenneth McKee of Employee Relations at FERCO offered Pauley the position. Compl. ¶ 7 & Ex. A. The letter states: "Your hourly rate will commence at $15.395 per hour coupled with the FERCO compensation package." Compl. Ex. A. FERCO has admitted in its answer that McKee sent the letter, and asserts that the letter speaks for itself. Answer ¶ 7. Pauley accepted FERCO's offer and resigned from her previous position at On–Line Plastics, Inc. where she had been earning $15.00 per hour. Compl. ¶ 4, 9–10; Pauley Aff.Ex. 3.

When Pauley started work at FERCO, she joined the contract unit of the pertinent union—the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers (AFL–CIO), Local 907. Godsey Aff. ¶ 7 & Ex.C. A collective bargaining agreement between FERCO and the union

was in effect at the time. Pauley soon discovered that Article IV of the agreement provided that the stated wage rate for new hires in service maintenance positions was $15.395 per hour, Godsey Aff.Ex. A at 56, *but the stated rate was also subject to a graduated pay scale:*

> [T]he starting rate for new hires shall be 75% of the job rate shown in Appendix A [$15.395 per hour for service maintenance positions]. An employee shall have his rate increased to 80% after fifty-two (52) weeks of employment, to 85% after one hundred and four (104) weeks of employment, to 90% after 156 weeks of employment, to 95% after 208 weeks of employment, and to 100% after 260 weeks of employment.

Godsey Aff.Ex. A at 8–9. Article I of the collective bargaining agreement provided that FERCO "agrees to and does hereby recognize the Union as the sole collective bargaining representative relative to rates of pay, wages, hours of employment, and other conditions of employment, for all employees of the Company in the contract unit." Godsey Aff.Ex. A at 1. Pursuant to these provisions in the collective bargaining agreement, Pauley (as a "new hire") was paid 75% of the $15.395 rate, or $11.55 per hour. That was $3.45 per hour less than she had earned at the job she left behind. Under the graduated pay scale, Pauley would need to work five years at FERCO before her wage rate would catch up with the wage she had been earning in her previous job.

The foregoing facts are not disputed, at least for purposes of the pending motion for summary judgment and the jurisdictional issue. There is a dispute about Pauley's actions after she learned that FERCO was paying her less than it had promised, and about the legal consequences of those actions. FERCO says that Pauley failed to exhaust the mandatory grievance procedures under the collective bargaining agreement. Pauley says that such efforts would certainly have been futile. FERCO also argues that Pauley, by continuing to work after she learned the "correct" wage rate, gave up any claim she may have had to the higher rate in the future. These matters do not affect subject matter jurisdiction. The central point is that both parties (and Pauley's union) agree that Pauley is seeking relief that would violate crystal-clear wage terms of the collective bargaining agreement.

Pauley brought suit against FERCO in state court. In her complaint, she did not articulate by name the legal theories she would use, but the facts she alleges establish that she seeks to recover the difference between the amount of wages she has been paid and the amount she was told she would be paid. The complaint also seeks liquidated damages and attorney's fees under Ind.Code § 22–2–5–1, *et seq.* FERCO in response relies on Article I of the collective bargaining agreement (quoted above), which recognizes the union as the sole collective bargaining representative for issues of pay for all union employees. Article V of the collective bargaining agreement details a procedure to be used in resolving disputes between FERCO, the union, and employees. Pauley took the first step in the grievance procedure by talking to her supervisors, but it is clear that she abandoned her efforts to seek an administrative remedy through the union.

## Discussion

Both parties have addressed several issues critical to the ultimate resolution of this case. The court will not reach those issues, however, before resolving the initial question of whether the court has subject matter jurisdiction over Pauley's claims. The central jurisdictional issue is whether Pauley's state law claims are "completely" preempted by federal labor law. If they are completely preempted, FERCO properly removed the case to federal court, and it is not at all clear that Pauley's claims could survive as federal claims under which she could obtain any relief. Accordingly, the exhaustion issue may be moot. On the other hand, if Pauley's state law claims are not completely preempted, this court lacks subject matter jurisdiction over the case. Furthermore, the exhaustion issue would certainly be moot, for there is no exhaustion requirement applicable to those state law claims.

## A. The Well-pleaded Complaint and "Jurisdictional" Preemption

█ FERCO removed the suit from state court on the theory that federal labor law controls and that plaintiff's claims necessarily arise under federal law. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), Justice Brennan reviewed for a unanimous Court some of the difficulties the courts have had in wrestling with the question when an action "arises under" federal law. Although some cases and commentators had suggested that a case might arise under federal law if the plaintiff would have to prove some proposition of federal law to prevail, or if a question of federal law appeared to be decisive in a case, Justice Brennan explained that the "well-pleaded complaint" rule had emerged as a doctrine that severely limits the number of cases that can "arise under" federal law for purposes of § 1331 where state law "creates the cause of action." 463 U.S. at 9, 103 S.Ct. at 2846. The well-pleaded complaint rule may be stated as follows:

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

463 U.S. at 10, 103 S.Ct. at 2846, quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law" in a properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987).

In *Caterpillar* the Supreme Court reviewed the settled law that "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." 482 U.S. at 393, 107 S.Ct. at 2430 (emphasis in original). Accord, *e.g., Franchise Tax Bd.*, 463 U.S. at 12, 103 S.Ct. at 2847–48; *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152–54, 29 S.Ct. 42, 43–44, 53 L.Ed. 126 (1908) (allegations in complaint anticipating a federal defense to claim arising under state law do not support federal question jurisdiction).

█ A special application of the well-pleaded complaint rule applies to a few federal statutes. The Supreme Court has held that those statutes have "extraordinary" preemptive force over an entire area of law such that a claim purportedly based on state law is necessarily a federal claim arising under federal law for purposes of subsequently applying the well-pleaded complaint rule to determine jurisdiction. *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. The Labor Relations Management Act ("LMRA") is one of the two principal statutes where the courts have applied "complete" preemption. (ERISA is the other one) Section 301 of the LMRA provides that a federal court has jurisdiction over a claim based on an alleged violation of a contract between an employee's employer and the employee's labor union. 29 U.S.C. § 185. "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853–54.

█ The Supreme Court has recognized two types of claims that § 301 completely preempts. First, § 301 displaces state law claims founded directly on rights created by collective bargaining agreements. *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968) (suit in state court to enforce "no strike" clause in collective bargaining agreement necessarily arose under federal law). In its most obvious application, § 301 displaces state law breach of contract claims where the contract allegedly breached is a collective bargaining agreement. The Supreme Court has frequently

explained the policy underlying § 301's broad preemptive power:

> [T]he subject matter of § 301(a) is "peculiarly one that calls for uniform law." The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

*Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962) (holding that state court with jurisdiction over § 301 claim should have applied federal labor law rather than state contract law) (citations omitted).

■ Second, § 301 completely preempts claims that do not specifically allege a violation of a collective bargaining agreement—or even necessarily mention the existence of a collective bargaining agreement—if the claims nonetheless are "substantially dependent on analysis of a collective-bargaining agreement." *International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987) (union member's tort suit against union for breach of alleged duty to provide safe work place held preempted because collective bargaining agreement provided basis for alleged duty). The Supreme Court reasoned that limiting complete preemption to claims formally alleged as breach of contract

claims "would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) (state law claim for bad faith handling of insurance claim pursuant to collective bargaining agreement held preempted).

The lower federal courts have applied the "substantially dependent" test to a variety of tort claims. See, *e.g., Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989) (claims for wrongful withholding of wages, defamation, and intentional infliction of emotional distress preempted under § 301 because they were "inextricably intertwined" with issue over whether plaintiffs were wrongfully discharged pursuant to collective bargaining agreement); *Mitchell v. Pepsi–Cola Bottlers, Inc.*, 772 F.2d 342, 344–45 (7th Cir.1985) (claim for tortious termination of employment arose under § 301 because claim in essence alleged a violation of the collective bargaining agreement); *Oglesby v. RCA Corp.*, 752 F.2d 272, 276–79 (7th Cir.1985) (claims essentially for wrongful discharge preempted under § 301 because discharge in order to be "wrongful" would have to violate terms of collective bargaining agreement). In *In re Amoco Petroleum Additives Co.*, 964 F.2d 706 (7th Cir.1992), the Seventh Circuit demonstrated the potential reach of the "substantially dependent" test. There, the plaintiff-employees brought a suit in state court for invasion of privacy and infliction of emotional distress caused by their employer's installation of a video surveillance camera outside the entrance to a women's locker room. Even though the collective bargaining agreement was silent as to the issue of surveillance, the employer argued that it was acting within its rights under the "management-rights clause" in the agreement. The employer argued, and the Seventh Circuit agreed, that since an element of the invasion of privacy claim was the plaintiffs' reasonable expectation of privacy, the claim required interpretation of the management-rights clause in the collective bargaining agreement. *Id.* at 709–10. Accordingly, plaintiffs' claims necessarily arose under and were completely

preempted by federal law, and the action was properly removed to federal court. *Id.*

■ In *Caterpillar Inc. v. Williams,* a unanimous Supreme Court identified an important limitation on the complete preemption doctrine. When considering the possibility of complete preemption by § 301, a court applies the above tests only to the plaintiff's claims without considering the defendant's defenses. Thus, the assertion of § 301 preemption in a defense does not automatically defeat the more obvious application of the well-pleaded complaint rule by transforming state claims into federal questions:

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

*Caterpillar,* 482 U.S. at 398–99, 107 S.Ct. at 2433.

The limitation on the complete preemption doctrine derives from the important, but sometimes elusive, difference between "ordinary" preemption, which deals with the merits of a case and the law to be applied, and complete preemption, which gives rise to federal question jurisdiction. Section 301 both confers jurisdiction on federal courts and authorizes federal courts to fashion a body of federal law to enforce collective bargaining agreements. *Textile Workers Union of America v. Lincoln Mills of Ala.,* 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). While an action arising under § 301 is necessarily controlled by federal substantive law, whether brought in a state or federal court, *Avco,* 390 U.S. at 560, the Supreme Court has clearly held that the availability of a federal preemption defense under § 301 does not necessarily mean that the action arises under federal law. As explained in *Caterpillar,* a plaintiff covered under a collective bargaining agreement may "assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." 482 U.S. at 396, 107 S.Ct. at 2431. An employer may then allege that plaintiff's state law claims are preempted, but must do so in state court. *Id.* at 397, 107 S.Ct. at 2432. Even if the employer proves that plaintiff's claims are preempted, this "does not establish that they are removable to federal court." *Id.* at 398, 107 S.Ct. at 2432 (state law claims for breach of individual employment contracts made while plaintiffs were not members of bargaining unit did not arise under federal law and were not removable). Accord, *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 n. 12, 108 S.Ct. 1877, 1885 n. 12, 100 L.Ed.2d 410 (1988) (holding that plaintiff's retaliatory discharge claim was not completely preempted, and noting that state court on remand would have to apply federal law to remaining issues requiring interpretation of collective bargaining agreement).

This distinction between jurisdictional preemption and defensive preemption under § 301 has produced disagreement among the lower federal courts and commentators. Some have suggested that any § 301 preemption is necessarily complete preemption. See *McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531, 534–38 (4th Cir.1991) (*en banc*) (if state tort law claims are preempted, "it is plain that the case was properly removed to federal court"); *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 996–97 (9th Cir.1987) (same); see also *McCormick,* 934 F.2d at 544 (Phillips, J., dissenting) ("Where [these courts] have strayed is in looking beyond the plaintiffs' claims to the merits of defendants' § 301 preemption positions ... to determine whether the claim is completely preempted."). Other courts and commentators, following the Supreme Court's clear language in *Caterpillar,* recognize the possibility that § 301 could fail to *completely* preempt a state law claim but then later still preempt the state claim on the merits. 482 U.S. at 398, 107 S.Ct. at 2432–33. See *Spellman v. Meridian Bank,* No.

94–3203, 1995 WL 764548, at *3–4, *14 (3d Cir. Dec. 29, 1995) (outlining the "narrow" complete preemption doctrine and noting that "ordinary preemption differs from complete preemption.... The former is a question of what substantive law—federal or state—should control a claim brought pursuant to state law"); *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1244 (8th Cir.1995); *Adkins v. General Motors Corp.*, 946 F.2d 1201, 1207–08 (6th Cir.1991) (citing *Caterpillar* and identifying separate issues of "complete" versus "partial" preemption); S. Candice Hoke, *Preemption Pathologies and Civic Republican Values*, 71 B.U.L.Rev. 685, 748 & 766 n. 295 (1991) ("Importantly, the [Supreme] Court has not recognized the complete preemption doctrine as a necessary incident of all field preemption."); Mary P. Twitchell, *Characterizing Federal Claims: Preemption, Removal, and the Arising–Under Jurisdiction of the Federal Courts*, 54 Geo. Wash.L.Rev. 812, 846 (1987) ("*Franchise Tax Board* [a case involving ERISA] demonstrates that courts can analyze recharacterization issues in some cases without deciding a preemption defense.").

Several Seventh Circuit decisions have used language that seems consistent with the former position that preemption and complete preemption are synonymous, but none have ever decided that question explicitly. See, *e.g., Douglas v. American Info. Technologies Corp.*, 877 F.2d 565, 568 (7th Cir.1989) (stating that since "the claim is preempted [by § 301], the claim was properly removed to the district court," and implicitly equating "preemption" with "complete preemption"). More recently, however, the Seventh Circuit has clearly distinguished between the different tasks of examining only the plaintiff's complaint on a jurisdictional inquiry and of looking beyond the complaint to the defenses on the merits of the preemption issue. *E.g., Rice v. Panchal*, 65 F.3d 637, 642–45 (7th Cir.1995) (distinguishing between complete jurisdictional preemption under ERISA and defensive preemption on the merits of state law claims).

In *Smith v. Colgate–Palmolive Co.*, 943 F.2d 764, 769 (7th Cir.1991), the court determined that the plaintiff-employees' fraud claim was preempted on the merits because the jury's evaluation of one of the elements "will inevitably require it to interpret the terms" of the collective bargaining agreement. The Seventh Circuit did not need to decide the issue of jurisdictional (complete) preemption, because the case was within the court's diversity jurisdiction. The court emphasized this "key procedural difference" in distinguishing the case from the Supreme Court's holding in *Caterpillar:*

> Had [plaintiffs] filed suit in state court and had Colgate sought to remove the case, it is entirely possible that we would decide that removal was improper because their complaint states neither a claim arising under § 301 [nor] a claim founded upon the Closure Agreement that § 301 would "completely preempt." Our inquiry in this case, however, has a different focus than the Supreme Court's attention to the "well-pleaded complaint rule" in [*Caterpillar*]. The plaintiffs in this case chose to file their state-law claim in federal court, with jurisdiction founded on the diversity of citizenship between themselves and Colgate. In doing so, they provided a separate jurisdictional basis for their claim, *making unnecessary the type of jurisdictional inquiry undertaken in* [*Caterpillar*]. In deciding whether the district court correctly awarded summary judgment to Colgate, then, we need not restrict ourselves to the question of whether this suit is properly in federal court. Rather, we can also inquire whether the plaintiffs' fraud claim is "substantially dependent on analysis of a collective bargaining agreement," and we are free to resolve this question by looking beyond the plaintiffs' complaint to the defenses Colgate asserts.

*Smith*, 943 F.2d at 770 (emphasis added) (citations omitted).

Although the tests are the same for determining both "ordinary" preemption and "complete" or "jurisdictional" preemption, the difference is that the latter is subject to the well-pleaded complaint rule. Thus, this court will look solely to the claims in plaintiff's complaint in determining whether it has subject matter jurisdiction. If those claims assert rights created by the collective

bargaining agreement or substantially dependent upon analysis of the collective bargaining agreement, the case was properly removed and the court may decide the merits, including FERCO's defensive use of the collective bargaining agreement. Otherwise, however, the court must remand the action to state court.

## B. Application to Pauley's Claims

 Pauley did not name her legal theories in her complaint. Even had she filed in federal court, however, Federal Rule of Civil Procedure 8 would not require her to have done so. See *Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.1993). In analyzing Pauley's claims to decide whether they arise under federal law, the court considers what the parties have said about the nature of Pauley's claims since after the complaint was filed, and the court also considers what legal theories for relief the factual allegations in Pauley's complaint would support. See *id.* (court has obligation to construe complaint liberally); *Prudential Ins. Co. of America v. Sipula,* 776 F.2d 157, 159 (7th Cir.1985) (court not bound by plaintiff's legal characterization of facts).

FERCO argues that, regardless of the purported legal theory, Pauley's claims are completely preempted. FERCO contends that Pauley's complaint fails the first test for determining complete preemption, characterizing Pauley's claims as being "founded directly on a right created by the collective bargaining agreement." According to FERCO, Pauley's claims are for wages allegedly owed her under Article IV of the collective bargaining agreement. Since the "area" of wages is within the agreement, says FERCO, Pauley essentially alleges that FERCO breached the agreement. That argument misses the most important aspect of Pauley's claims. She seeks wages allegedly owed to her based on a promise that FERCO made to her individually, not under the collective bargaining agreement. In fact, the parties agree that Pauley has been paid in compliance with the collective bargaining agreement. They also agree that the relief she seeks is actually contrary to the wage terms of the collective bargaining agreement. Also

unpersuasive is FERCO's contention that Pauley's complaint "invokes" the collective bargaining agreement by referring to it, and therefore asserts rights under the agreement. The references to the agreement merely detail nonessential facts surrounding Pauley's claims for relief. They are surplusage that can neither support nor defeat federal question jurisdiction. See *Franchise Tax Bd.,* 463 U.S. at 10, 103 S.Ct. at 2846–47 (jurisdictional question must be determined from "what necessarily appears" in the complaint).

 FERCO next contends that even if Pauley's claims do not assert rights under the agreement, they are nonetheless completely preempted because the resolution of the claims is "substantially dependent" upon analysis of the terms of the collective bargaining agreement. Pauley has asserted in her response to FERCO's summary judgment motion that her claims are for actual fraud and constructive fraud. For both of these Indiana common law torts, the complaining plaintiff must prove in part that the defendant deceptively misrepresented (or sometimes concealed) a past or existing material fact and that the plaintiff reasonably relied on the misrepresentation. *Showalter, Inc. v. Smith,* 629 N.E.2d 272, 274 (Ind.App. 1994) (actual fraud); *Voigt v. Voigt,* 645 N.E.2d 623, 625 (Ind.App.1994) (constructive fraud). For actual fraud, the plaintiff must prove that the defendant knew the representation was false or was recklessly indifferent to its falsity. *Wright v. Pennamped,* 657 N.E.2d 1223, 1230 (Ind.App.1995). The facts alleged in Pauley's complaint also support the separate state claims of breach of an individual contract and promissory estoppel. For a breach of contract claim, a plaintiff must prove that a contract existed and that the defendant breached the contract. *Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind. App.1993). For a promissory estoppel claim, a plaintiff must prove that the defendant made a promise with the expectation that the plaintiff would rely on it and that the plaintiff reasonably relied on that promise. *First Nat'l Bank of Logansport v. Logan Mfg. Co.,* 577 N.E.2d 949, 954 (Ind.1991).

For all of these claims, the most relevant facts are simply (1) that FERCO represented/contracted/promised that Pauley would be paid one rate ($15.395) and (2) that FERCO then actually paid her another rate ($11.55). No interpretation of the collective bargaining agreement is necessary to establish these facts (which are undisputed in this case). See *Loewen Group Int'l, Inc. v. Haberichter,* 65 F.3d 1417, 1422–23 (7th Cir.1995) (claims for breach of individual contract, breach of covenant not to compete and breach of fiduciary duty held not preempted because elements of claims require only factual inquiries concerning collective bargaining agreement). In her case in chief, Pauley could show that FERCO expected her to rely on the $15.395 figure and that she was reasonable in relying on the figure by introducing the offer letter from FERCO's agent. Again, no reference to the collective bargaining agreement would be necessary.

Even assuming for purposes of argument that some of Pauley's claims require reference to the collective bargaining agreement's wage provisions—for example, in order to establish the *scienter* element of the actual fraud claim—no "interpretation" would be necessary because the meaning of the wage provisions is clear and uncontested. See *Livadas v. Bradshaw,* 512 U.S. 107, ——, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished"); *Atchley v. Heritage Cable Vision Assoc.,* 904 F.Supp. 870, 875–76 (N.D.Ind. 1995) (distinguishing interpretation of collective bargaining agreement from "mere reference" to it).

FERCO relies on *Atchley,* 904 F.Supp. 870, where Judge Miller held that plaintiffs' claim under the Indiana Wage Statute, Ind. Code. § 22–2–5–1, was completely preempted. (Pauley's complaint asserted a right to recover under the same statute). The reasoning of *Atchley* does not apply here. Judge Miller explained that a claim under the Indiana Wage Statute, designed to protect the right to receive timely wage payments, is an independent, state-created cause of action not subject to § 301 preemption. *Id.* at 875. There, however, plaintiffs did not argue that they were not timely paid, but that they were not paid enough. *Id.* Specifically, the parties disagreed over when the collective bargaining agreement mandated that certain wage increases take effect. In essence, then, plaintiffs were arguing that their employers breached the collective bargaining agreement, so Judge Miller concluded that preemption was appropriate to assure that the purposes animating § 301 would not be frustrated by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, *id.,* or by employees' efforts to renege on their duties assumed in the collective bargaining agreement by relabelling as tort suits actions simply alleging breaches of that agreement. See *Livadas,* 512 U.S. at ——, 114 S.Ct. at 2078.

Section 301 was designed primarily to ensure that labor agreements are given uniform interpretation across the country. Pauley neither asserts a breach of the collective bargaining agreement nor attempts to enforce a right under that agreement, and no provision of the agreement is in dispute. Accordingly, pursuant to both *Livadas* and *Caterpillar,* Pauley is not asserting claims that necessarily arise under federal law. This analysis still leaves FERCO free to argue as a defense in state court that federal labor law preempts Pauley's state law claims. The Supreme Court's opinion in *J.I. Case Co. v. N.L.R.B.,* 321 U.S. 332, 337–39, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944), addressed some ways in which individual labor contracts may run afoul of the federal law of collective bargaining, but on the question of whether such contracts could *add* to the rights guaranteed to employees in collective bargaining agreements, the Court left the matter "to be determined by appropriate forums under the laws of contracts applicable, and to the Labor Board if they constitute unfair labor practices." In an interesting opinion, the Court of Appeals of North Carolina has rejected defensive preemption arguments similar to FERCO's, explaining:

any other result might suggest that an employer could flout with impunity the restrictive provisions of a collective-bargaining agreement by making individual, independent promises to an employee, and then raise the collective-bargaining agreement as a defense when the employee seeks to have those promises fulfilled. *Walton v. Carolina Tel. & Tel. Co.*, 93 N.C.App. 368, 378 S.E.2d 427, 432 (1989); see also *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917, 923–25 (Iowa 1994) (collecting cases and holding, on similar facts, that fraud claims were not preempted by § 301).

FERCO relies on several other cases that it suggests support its contention that Pauley's claims are completely preempted. Those cases, however, deal with the issue of preemption on the merits, an issue that this court need not and should not decide. FERCO also argues that Pauley's act of joining the labor union meant that the collective bargaining agreement supplanted her individual employment contract such that she cannot now seek enforcement of her individual contract. Again, however, that issue is presented only in FERCO's defensive arguments against Pauley's state law breach of contract claim and not earlier in the necessary elements for Pauley's claim. Thus, the issue does not render Pauley's claim completely preempted so as to give this court federal question jurisdiction under the well-pleaded complaint rule. The case must be remanded to state court. 28 U.S.C. § 1447(c) (after removal, if federal court lacks subject matter jurisdiction, "the case shall be remanded"). The state court may then consider FERCO's defensive argument that § 301 preempts Pauley's individual contract claim.

Under 28 U.S.C. § 1447(c), an order remanding an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Awards of costs and fees no longer require a finding that the removal was in bad faith. See *Macri v. M & M Contractors, Inc.*, 897 F.Supp. 381, 385 (N.D.Ind.1995). An award of costs and fees would not be appropriate here. FERCO's removal of the action was a reasonable and cautious response to a complaint that did not clearly identify the legal theories for relief and that unnecessarily referred to the collective bargaining agreement. The fact that plaintiff did not move for remand is further evidence that the removal was not unreasonable.

### Conclusion

The case will be remanded to the Lawrence Circuit Court because this federal court lacks subject matter jurisdiction over Pauley's claims. FERCO's motion for summary judgment is denied as moot.