**Robert KITTLE, Plaintiff,**

**v.**

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA and Darrell Kemmerer, as General Manager and Agent of the Prudential Insurance Company of America, Defendants.**

**No. IP98–1273 CB/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 19, 2000.

G Terrence Coriden, Columbus, IN, for plaintiff.

Paul R Brockmeyer, Seyfarth Shaw Fairweather & Geraldso, Chicago, IL, Edwin L Gagnon, Gagnon Diehl & Spilker, Indianapolis, IN, for defendants.

## ORDER REMANDING ACTION TO STATE COURT FOR LACK OF SUBJECT MATTER JURISDICTION

BARKER, Chief Judge.

Plaintiff, Robert Kittle ("Kittle"), originally filed this fraud action in Bartholomew Circuit Court. Kittle contends that defendants, The Prudential Insurance Company of America ("Prudential"), and its general manager and agent, Darrell Kemmerer ("Kemmerer"), induced him to terminate his previous employment as a police officer by allegedly falsely representing that Prudential would hire him as

a life insurance agent servicing a specific sales territory, "Agency 68." Defendants removed the state action to this court, invoking federal-question jurisdiction pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Defendants contend that after Kittle began working at Prudential, a collective bargaining agreement ("CBA") vested Prudential with the discretion to assign Kittle accounts from any sales territory of its choosing, which ultimately did not include all the accounts from the Agency 68 territory. Therefore, Prudential asserts that the resolution of Kittle's state law fraud claims requires interpretation of the CBA, which, if true, results in the LMRA's complete preemption of the state law claim and provides this court with original jurisdiction over the removed action. Accordingly, defendants move for summary judgment on the removed claims, contending that Kittle failed to exhaust his administrative remedies under the CBA. For the reasons discussed below, we find that Kittle's state law claims stand independently of the CBA and remand this action to state court for lack of subject matter jurisdiction.

*Background*

Robert Kittle was a police officer in Columbus, Indiana, prior to the start of his employment with Prudential in March 1997. *See* Compl. ¶¶ 4–6 Kittle contends that while so employed as a police officer in 1996, Darrell Kemmerer approached him on behalf of Prudential and attempted to induce him to leave that position and to join Prudential as a life insurance agent. *Id.* Kittle alleges that Kemmerer intentionally misrepresented that if Kittle resigned his police position and accepted employment at Prudential, Kittle would function as the exclusive servicing agent for the territory known as Agency 68. *Id.* ¶¶ 7, 8. Kittle alleges that at the time Kemmerer made these promises in 1996, and up to the time in 1997 when Kittle resigned his employment with the City of Columbus and became an agent for Prudential, the defen-

dants knew that these inducements were false and that Kittle had relied upon them. *Id.* ¶¶ 8, 9. Kittle asserts that Prudential never intended to assign him to Agency 68, even though Kemmerer lead him to believe so.

Kittle joined Prudential as a part-time insurance agent in March 1997 and became a full-time agent on August 23, 1997. *See* Pre–Summ. J. Statement ¶¶ 1–2. Prudential apparently had assigned a number of Agency 68 accounts to another employee before Kittle became a full-time agent. *Id.* ¶ 6. When Kittle became a full-time agent in August, Prudential designated him as a canvassing agent for Agency 417 and apparently failed to provide him with any Agency 68 accounts. *See* Alston Decl. (Apr. 13, 1999) ¶ 6. Eventually, Kittle received some Agency 68 accounts when agent Michael McCraken retired, although the parties fail to assess the significance of those accounts. However, it is clear that Kittle did not receive exclusive responsibility over sales territory Agency 68 and that he continued servicing Agency 417. We suspect that the Agency 68 accounts that Kittle actually received comprised only a small portion of the total territory business, as Kittle resigned his employment less than six months later, on February 13, 1998. *Id.* ¶ 8.

The parties do not dispute that a CBA existed between Prudential and the United Food & Commercial Workers International Union (AFL–CIO & CLC) ("the Union"). The CBA purports to cover the Union's representation of Prudential employees regarding "rates of pay, wages, hours of employment, or other conditions of employment." Alston Decl. (Apr. 13, 1999) (Ex. A, CBA). We presume that Kittle was a member of the Union when he began working as a life insurance representative for Prudential, as neither party suggests that he was not so qualified by virtue of his employment. The CBA, Article 7, Section 2, provided that Prudential may transfer business accounts to its em-

ployees "in its sole discretion, which may include assignment to any Prudential Representative of the Employer's choosing." *Id.*

The CBA, Articles 24 and 25, also provided for mandatory grievance and arbitration procedures for disagreements concerning the "interpretation or application of any provision of the Agreement or the application of any rule, regulation, or practice of the Employer now or hereafter in force." *Id.* It is undisputed that Kittle has not exhausted these administrative remedies by filing a grievance with the Union regarding assignments or accounts he received from Prudential. *See* Pre–Summ. J. Statement ¶ 9.

### Discussion

The threshold jurisdictional issue before us is whether Kittle's state law claims are completely preempted by federal labor law. If the state law claims are founded directly upon rights created by the CBA, or if the claims are substantially dependant on analysis of the CBA in question, the state claims are completely preempted for jurisdictional purposes and the defendants properly removed the case to federal court. However, if the state claims stand independently of the CBA based solely on Kittle's well-pleaded complaint, the lack of *complete* preemption mandates that we remand this action to state court. In that event, the state court must assess the merits of Kittle's claims, including any federal preemption defenses that Prudential may advance before that court.

### A. The Removal Standard and "Jurisdictional" Preemption

 Federal district courts have original jurisdiction over civil cases concerning a "federal question," that is, actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Speciale v. Seybold,* 147 F.3d 612, 614 (7th Cir.1998). Only state court ac-

tions that originally could have been filed in federal court may be removed to federal court by the defendant. *See* 28 U.S.C. § 1441(a). Because the parties to the present action are not of diverse citizenship, subject matter jurisdiction depends entirely on whether we have federal-question jurisdiction over this action.[1] The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). This rule makes the plaintiff the master of the complaint, allowing the plaintiff to avoid federal jurisdiction by pleading only state law claims. Federal issues that arise solely as a defense to a state law action (sometimes referred to as "conflict preemption" or "defensive preemption") do not confer federal-question jurisdiction. *Atchley v. Heritage Cable Vision Assocs.,* 101 F.3d 495, 498 (7th Cir.1996). Thus, as long as the plaintiff's well-pleaded complaint is confined to a state law claim, the Supreme Court has recognized that subject matter jurisdiction escapes a federal district court even if a defense of federal preemption exists:

> Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint.... Thus, it is now well settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *accord Louisville & N R Co. v. Mottley,* 211 U.S. 149, 152–54, 29 S.Ct. 42,

---

1. Kittle is a resident of Indiana, and Prudential is a corporation authorized to do business in Indiana, with its principal place of business in Indiana. *See* Compl. ¶¶ 1–2.

43–44, 53 L.Ed. 126 (1908) (an anticipated federal defense to state law claims fails to provide subject matter jurisdiction necessary for proper removal).

However, an exception to the well-pleaded complaint rule exists, known as the "complete preemption" doctrine. *See Atchley*, 101 F.3d at 498. On occasion, the Supreme Court has concluded that the preemptive force of a federal statute is so extraordinary that it converts a state common-law complaint into one stating a federal claim for purposes of subsequently applying the well-pleaded complaint rule to determine jurisdiction. *See Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430 (*quoting Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)).

■ The Labor Management Relations Act ("LMRA") and ERISA represent the two, primary statutes where courts have applied the complete preemption doctrine. "[T]he pre-emptive force of § 301 [of the LMRA] is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983); 29 U.S.C. § 185. The most prominent rationale for the complete preemption doctrine lies in an attempt to ensure uniformity in the interpretation of collective bargaining agreements. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403, 108 S.Ct. 1877, 1880, 100 L.Ed.2d 410 (1988); *Atchley*, 101 F.3d at 498. Hence, any suit for violation of a contract between an employee's labor union and the employee's employer arises under federal law for jurisdiction purposes, even if a state contract or tort claim would provide a cause of action in the absence of § 301. *See Franchise Tax Bd.*, 463 U.S. at 23, 103 S.Ct. at 2853–54.

■ The Supreme Court has recognized that § 301 completely preempts two sorts of claims: (1) claims founded directly on rights created by collective bargaining agreements, such as a claim that the defendant breached the CBA itself, and (2) claims "substantially dependent on analysis of a collective bargaining agreement." *International Bhd. of Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3, 107 S.Ct. 2161, 2166–67 n. 3, 95 L.Ed.2d 791 (1987); *Loewen Group Int'l. Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir.1995). However, in *Caterpillar, supra*, the Supreme Court explicated the limits of the complete preemption doctrine. In that case, the Court held that even if a party asserted a defense to a state law claim that required a court to apply or interpret a CBA, the well-pleaded complaint rule nonetheless allows a plaintiff to assert legal rights in state court independent of a CBA without conferring jurisdiction upon a federal court, so long as the contract relied upon by plaintiff is not the CBA. *Caterpillar*, 482 U.S. at 396–97, 107 S.Ct. at 2431–32. The Court explained:

It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law,

thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing.

482 U.S. at 398–99, 107 S.Ct. at 2433.

In a telling observation that pinpoints the distinction between complete, or jurisdictional, preemption and ordinary, or conflict, preemption, the Court recognized that while the well-pleaded complaint rule prohibited removal of the state action to federal court, the defendant could still advance its federal preemption defense in state court: "[t]he fact that a defendant might ultimately prove [in state court] that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court." *Id.*

Likewise, our circuit has elaborated upon this distinction:

> Although the "complete preemption" doctrine has become fully accepted, confusion remains because the complete preemption doctrine "is not a preemption doctrine but rather a federal jurisdiction doctrine." ...
>
> ....
>
> .... A federal defense to a claim arising under state law does not create federal jurisdiction and does not authorize removal. [Defendants] may perhaps choose to argue ... [the] conflict preemption defense [in state court] ..., but they do not have federal jurisdiction in this case.

*Speciale,* 147 F.3d at 615, 617; *see Smith v. Colgate–Palmolive Co.,* 943 F.2d 764, 770–71 (7th Cir.1991) (finding that since plaintiff originally brought a state law claim in federal court, the court need not apply the complete preemption doctrine or confine itself to analyzing plaintiffs' well-pleaded complaint; instead, the court analyzed the defenses to plaintiffs' claims and concluded that § 301 preempted those state law claims, but the court added that had plaintiff filed in state court, it is "entirely possible that we would decide that

removal was improper" under the "complete preemption" doctrine).

As Judge Hamilton of our court aptly observed, "[a]lthough the tests are the same for determining both 'ordinary' preemption and 'complete' or 'jurisdictional' preemption, the difference is that the latter is subject to the well-pleaded complaint rule." *Pauley v. Ford Elecs. & Refrigeration Corp.,* 941 F.Supp. 794, 801 (S.D.Ind. 1996) (Hamilton, J.).

Therefore, in this case, we examine Kittle's complaint, without regard to Prudential's defenses, to determine if removal was proper. If Kittle's state law claims are founded directly upon rights created by the CBA, or if the claims are substantially dependant on analysis of the CBA in question, those claims are completely preempted and this court has subject matter jurisdiction to reach the merits of the dispute. If not, we are required to remand the action to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.")

### B. Kittle's State Law Claims Are Not Completely Preempted

Kittle's Indiana complaint is succinct in facts and devoid of legal theories, a form that complaints (at least in federal court) are allowed, and even encouraged, to assume. *See Kirksey v. R.J. Reynolds Tobacco Co.,* 168 F.3d 1039, 1041 (7th Cir. 1999) (noting that plaintiffs need only plead a short statement, in plain English, of the legal claim, stating that "[t]he courts keep reminding plaintiffs that they don't [ ] have to file long complaints, don't have to plead facts, don't have to plead legal theories."). At its essence, Kittle's complaint sounds in the state law tort of fraud (whether actual or constructive is of no moment for our jurisdictional inquiry, as we shall see). Kittle complains that Prudential committed fraud based on its promises and conduct before he began work at Prudential. Specifically, he alleg-

es that one of Prudential's general managers, Darrell Kemmerer, fraudulently induced him to abandon his then-current employment by falsely representing that Kittle would be the exclusive agent servicing a certain Prudential sales territory, Agency 68.

■ Initially, we observe that Prudential does not expressly contend that Kittle's claims are founded directly on a right created by the collective bargaining agreement, the first prong of the complete preemption test. Even if defendants had advanced that argument, it would fail. Kittle neither invokes the CBA in his complaint nor relies on any right created by it. On the contrary, Kittle's complaint demonstrates that Prudential allegedly made promises to him individually, apart from any right conveyed by the CBA. Prudential's alleged misrepresentations occurred well before Kittle ever joined Prudential, and thus well before he was subject to the terms of the CBA. *Cf. Caterpillar,* 482 U.S. at 388–89, 107 S.Ct. at 2427–28 (finding removal improper even though plaintiffs possessed substantial rights under the CBA and could have brought suit under the LMRA in federal court; plaintiffs elected to assert state law contract rights independent of the CBA since defendants allegedly made job security representations to plaintiffs during the time in which the plaintiffs occupied positions outside the coverage of the CBA). Kittle acknowledges this fact in his brief, contending that his claims are based in tort, not contract, and that his fraud claims arose prior to his becoming a Prudential employee subject to the CBA. *See* Pl.'s Br. Opp. Summ. J. at 2–3. Moreover, Kittle simply never alleges a breach of the CBA in any respect, and neither party suggests that the CBA conveyed to Kittle rights to any sales territory, much less Agency 68. If anything, the CBA provision that Prudential claims to be at issue (Article 7, Section 2), which vests Prudential with the "sole discretion" to assign territory accounts to its agents, demonstrates that Kittle's claim clearly is not based on the CBA. We find no suggestion in Kittle's well-pleaded complaint that Prudential has violated any provision in the CBA. We thus conclude that Kittle's claims are founded on state tort law and arise independently of any purported right created by the CBA.

In a case markedly similar to the one at bar, Judge Hamilton reached a conclusion identical to that which we adopt today, finding that defendants' state law claims for actual and constructive fraud, promissory estoppel and breach of contract were not completely preempted by the LMRA. *See Pauley v. Ford Electronics & Refrigeration Corporation, supra,* 941 F.Supp. 794 (S.D.Ind.1996). In *Pauley,* the plaintiff brought suit against her employer in state court, contending that her employer recruited her by fraudulently overstating the wage rate she would receive upon hire. The defendant removed the action to federal court, claiming that because a CBA governed matters pertaining to wage rates, the plaintiff's state law claims were completely preempted by § 301 of the LMRA. The court disagreed and found that the wage promises made to the employee before her hire were not founded directly on a right created by a CBA: "[plaintiff] seeks wages allegedly owed to her based on a promise that [defendant] made to her individually, not under the [CBA]. In fact, the parties agree that [plaintiff] has been paid in compliance with the [CBA]. They also agree that the relief she seeks is actually contrary to the wage terms of the [CBA]." *Pauley,* 941 F.Supp. at 802. Additionally, the court held that resolution of the plaintiff's state law claims was not "substantially dependant upon analysis of the terms of the CBA." *Id.* After a thorough and cogent discussion of the complete preemption doctrine, the court concluded that the LMRA did not completely preempt plaintiff's state law claims and remanded the action to state court for lack of subject matter jurisdiction.

In our case, Prudential essentially suggests that resolution of Kittle's state law claims is substantially dependant upon an analysis of the account/territory assignment provision of the CBA, implicating the second prong of the complete preemption test. We disagree. Kittle plainly asserts state law claims for actual fraud, and arguably for constructive fraud as well.[2] Under Indiana law, each tort requires a plaintiff to prove in part that the defendant deceptively represented a past or existing material fact and that the plaintiff reasonably relied on the misrepresentation. *See Pauley*, 941 F.Supp. at 802; *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 581–82 (Ind.Ct.App.1999) (establishing that actual fraud requires a false misrepresentation made with knowledge or in reckless ignorance of the falsity); *Orem v. Ivy Tech State College*, 711 N.E.2d 864, 868 (Ind.Ct. App.1999) (finding that the elements of constructive fraud include a duty and violation of that duty by the making of deceptive material misrepresentations, and recognizing that unlike an actual fraud claim, intent is irrelevant and representations regarding future conduct are actionable).

The factual core of these claims is straightforward and discernable without interpretation of the collective bargaining agreement. Kittle simply alleges that Kemmerer represented and promised that Kittle would receive exclusive responsibility for Agency 68, an alleged fact at odds with his actual assignment to Agency 417 and partially to Agency 68. *See* Defs.' Mem. Supp. Summ. J. at 2; Compl. ¶¶ 4–9. Like the court in *Pauley*, we find that consultation or analysis of the CBA is wholly unnecessary to resolve these factual matters. *See also Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882 (finding no § 301 preemption of state tort claim because "[e]ach of these purely factual questions [relating to the elements of retaliatory discharge] pertains to the conduct of the employee

and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement."); *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232 (3rd Cir.1995) (finding no § 301 preemption of state law fraud claim since an "examination of the employer's behavior, motivation, and statements does not substantially depend upon the term of the [CBA]."). Moreover, the reasonable reliance element of the fraud claims depends on events occurring before Kittle ever began working at Prudential. At trial, Kittle can attempt to demonstrate that Kemmerer intended to induce him to resign from his police officer position in reliance on the alleged representation regarding Agency 68, and that his reliance on those specific promises was reasonable. At most, the CBA is tangential to this inquiry, and more likely, it is completely irrelevant. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985) ("[N]ot every dispute concerning employment, or tangentially involving a provision of a[CBA], is pre-empted by § 301 or other provisions of the federal labor law.")

Our conclusion is not altered by the possibility that the parties may reference the CBA's assignment of business/territory provision, such as to prove the scienter requirement of the actual fraud claim (e.g. that Kemmerer intentionally misrepresented that Kittle would receive exclusive responsibility for Agency 68), since resolution of Kittle's fraud claims does not pose conflicting substantive interpretations of any provision in the CBA. *See Loewen*, 65 F.3d at 1423 ("[M]erely examining the [CBA] to determine whether a conflict actually exists is not 'interpreting' the [CBA] for § 301 preemption purposes."); *Pauley*, 941 F.Supp. at 803. Simply put, even if the parties consulted the CBA provision at issue, its meaning is clear and not in question. *See Livadas v. Bradshaw*, 512 U.S.

---

2. We express no opinion of the merit or viability of these fraud claims. Also, Kittle has not asserted any claims for breach of contract or promissory estoppel.

107, 124, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a[CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").[3]

Therefore, the purpose animating the complete preemption doctrine—uniform interpretation of collective bargaining agreements—is left intact where Kittle's state law fraud claims stand independently of the meaning of the CBA. Section 301 of the LMRA, of course, applies to alleged violations of labor contracts, but as the master of his complaint, Kittle has elected not to allege a breach of the CBA or to assert any putative right based on that agreement, nor is an interpretation of the CBA necessary to resolve the state law claims. Thus, the LMRA does not completely preempt the state law claims under the well-pleaded complaint rule, and we shall remand this action to state court for lack of subject matter jurisdiction. Prudential is free to argue the merits of Kittle's fraud claims in that forum, in addition to advancing any defenses that may involve conflict preemption.

As a final matter, Prudential asserts an "alternative" to its complete preemption argument, requesting that we stay this action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. Perhaps sensing that Kittle's fraud claims are not completely preempted by the LMRA, Prudential contends that quite apart from the collective bargaining agreement at issue in this case, Kittle signed the security industry's "Form U–4," which, according to Prudential, mandates arbitration of this dispute. *See Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir.1999) (finding that plaintiff waived right to Article III forum by signing Form U–4 and consenting to arbitration).

■ However, our lack of subject matter jurisdiction prevents our consideration of the merits of Kittle's state law fraud claims; we are unable to entertain Prudential's request for arbitration under the FAA for similar reasons. The FAA "is something of an anomaly in the field of federal-court jurisdiction ... it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise .... [T]here must be diversity of citizenship or some other independent basis for federal jurisdiction before the order [compelling arbitration] can issue.... [E]nforcement of the Act is left in large part to the state courts." *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1104–05 (7th Cir.1996) (internal citations and quotations omitted) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983)). Prudential has

**3.** Our circuit's decision in *Smith v. Colgate–Palmolive Company, supra,* is not to the contrary. *See Smith v. Colgate–Palmolive Co.,* 752 F.Supp. 273 (S.D.Ind.1990) (Barker, J.), *aff'd,* 943 F.2d 764 (7th Cir.1991) (finding a state law fraudulent inducement claim preempted by § 301 of LMRA; in order to determine if the plaintiffs reasonably relied on the employer's false representations about extended employment regarding new jobs that they accepted, the court had to interpret the layoff provisions of the CBA governing their former jobs). As we noted previously, the *Smith* case distinguished itself from the case at bar when that court recognized that its analysis was not confined by the well-pleaded complaint rule or the complete preemption doctrine. Had the plaintiffs originally brought the action in state court instead of federal court, which the court described as a "key procedural difference," the court stated that "it is entirely possible that we would decide that removal was improper" under the complete preemption doctrine. 943 F.2d at 769–70. Moreover, considerable factual differences minimize the relevance of *Smith* to this case. Most notably, the parties have not identified any CBA provision requiring interpretation that may have governed Kittle's former employment as a police officer (the counterpart to the CBA requiring interpretation in *Smith*), and, as we have said, the CBA governing Kittle's new employment as a Prudential employee neither requires interpretation in this case, nor did it include Kittle within its coverage prior to the start of his Prudential employment when the alleged misrepresentations were made.

not established diversity of citizenship jurisdiction (nor can it based on what we know now) and, as we have explained, federal-question jurisdiction eludes us in this case as well. Again, Prudential may raise its arbitration argument under the FAA in state court, but we lack jurisdiction to consider it here. Accordingly, we must remand this action to state court pursuant to 28 U.S.C. § 1447(c).

## Conclusion

For the reasons discussed, we conclude that the LMRA fails to completely preempt Kittle's state law fraud claims. Accordingly, we lack subject matter jurisdiction over this case and remand the action to the Bartholomew Circuit Court. Defendants' "Motion For Summary Judgment Or, In The Alternative, To Stay Action Pending Arbitration," is denied as moot.[4]

---

**4.** Defendants' motion for Rule 11 sanctions also is denied as moot.